UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KRISTEN ELIZABETH WAGNER,

    Petitioner,

v.                                 Case No. 3:23cv23972-LC-HTC

RICKY D. DIXON,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Kristen Elizabeth Wagner, through counsel, filed a petition under 28 U.S.C. § 2254 raising two grounds challenging her conviction in Okaloosa County Circuit Court Case 2014 CF 1697. Doc. 1. After considering the petition, Wagner's memorandum, Doc. 2, the record, the Secretary's response, Doc. 9, and Wagner's reply, Doc. 11, the undersigned finds the petition should be DENIED without an evidentiary hearing.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

    **A.  Factual Background**

Wagner was charged and found guilty of the attempted murder with a firearm of her then-husband, Ricky Wagner, after a heated argument turned violent. The following statement of facts is taken from the First District Court of Appeals' ("First DCA") written opinion affirming Wagner's conviction on direct appeal. *Wagner v. State*, 240 So. 3d 795 (Fla. 1st DCA 2017).

On the night of July 26, 2014, Wagner and her husband got into an argument. Wagner had been drinking (she said she had two rum-and-cokes; he said she had as many as five), and the husband claimed that she was the aggressor. However, the husband admitted that during the argument, he held Wagner down on the bed, pushed her to the floor, and threw her cell phone against the wall.

After the husband's son intervened in the argument, Wagner left the house and went across the street to a neighbor's house. When the neighbor did not answer the door, Wagner returned to her house and demanded her keys from her husband, who was standing on the front porch about 25 to 30 feet away from Wagner. Wagner's husband told her to come get the keys, but she pulled a gun (a Ruger .380–caliber semi-automatic pistol with a laser sight) from her shorts, pointed it at the husband, and told him to throw her the keys. The husband underhand-tossed the keys towards Wagner and they landed 3 to 4 feet in front of her. He then turned around and closed the glass front door behind him as he went back inside the house.

Then, according to Wagner's testimony, as she bent down to pick up the keys with her left hand, the gun that she was holding in her right hand accidentally discharged. She could not remember if her finger was on the trigger, but she testified that she "absolutely [did] not" intentionally pull the trigger and that she was not aiming at anything when the gun went off. The bullet went through the glass front door and struck her husband in the lower back. Her husband made it to their son's room where he collapsed on the floor and told the son to lock the door and call 911.

Meanwhile, Wagner retrieved the keys and went to her car. She put the gun in the center console of the car, but she did not immediately leave. Instead, she returned to the house (without the gun) to look for her glasses, wallet, and phone. When she was unable to find these items, she took her husband's phone and wallet from the master bedroom. Then, she left the house and drove away in her car. She was apprehended by the police a short time later.

### B.     Procedural History

The State charged Wagner in a one-count information with first degree attempted murder with a firearm, Doc. 10-2 at 142, and after the jury found her guilty, Doc. 10-5 at 102, the trial court sentenced Wagner to 35 years in prison with a 25–year mandatory minimum based on the jury's finding that she discharged a firearm and caused great bodily harm to the husband. Doc. 10-5 at 150.

Wagner filed a timely direct appeal, which resulted in a written opinion affirming her conviction. In its written opinion, the First DCA addressed only one issue – Wagner's argument that the trial court erred in striking her notice of intent to rely on battered spouse syndrome ("BSS") evidence at trial and precluding the admission of such evidence. *Wagner v. State*, 240 So. 3d 795 (Fla. 1st DCA 2017). As will be discussed below, Ground One of the petition is premised on this alleged trial court error.

Wagner also filed a Motion for Postconviction Relief. Doc. 10-30 at 20. The trial court granted relief and ordered that a new trial be set. Doc. 10-34 at 372. However, on appeal by the State, the First DCA reversed and reinstated Wagner's conviction. Disagreeing with the trial court, the First DCA determined that counsel was not deficient in failing to ensure that the trial court gave a no-duty-to-retreat instruction from the Stand Your Ground statute and that Wagner was not prejudiced by the omission of that instruction. *State v. Wagner*, 353 So. 3d 94 (Fla. Dist. Ct. App. 2022), *reh'g denied* (Jan. 6, 2023), *review denied*, No. SC2023-0184, 2023 WL 4670962 (Fla. July 21, 2023). As will be discussed below, Ground Two of the petition raises the same ineffective assistance of counsel argument.

Although Wagner's judgment and conviction became final for federal habeas purposes on October 9, 2019, the one-year deadline for her to file a federal habeas petition was tolled from February 25, 2020, when she filed her post-conviction motion in state court, until July 21, 2023, when the Florida Supreme Court denied her petition for writ of certiorari. Because Wagner filed the instant petition August 29, 2023, it is timely filed.

## II.     LEGAL STANDARDS

### A.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

Under the AEDPA, which governs a state prisoner's petition for habeas corpus relief, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White v. Woodall*, 572 U.S. 415, 419 (2014).  "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision.  *Id.*  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406

(2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

One of Wagner's grounds for relief is premised on ineffective assistance of counsel ("IAC"). An IAC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   DISCUSSION

### A.   Wagner Has Failed to Exhaust Ground One

In Ground One, Wagner argues the trial court denied her rights under the Sixth and Fourteenth Amendments by precluding her from arguing the BSS.  Doc. 2 at 20.  The Secretary argues Wagner failed to exhaust this claim by failing to fairly present it as a federal claim on direct appeal.  Doc. 9 at 7-11.  The Secretary also argues, even if exhausted, the claim fails on the merits.  *Id*.  Because the undersigned finds Ground Two has not been exhausted, the undersigned does not address the claim on the merits.

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including appellate review), thereby alerting each court to the federal nature of the claim.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan*, *supra*, at 365-366; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  The petitioner must alert the state court to the federal nature of the claim, and failing to do so deprives the state court of a meaningful opportunity to review the claim.  *See Baldwin*, 541 U.S. at 29; *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004) (a

Case No. 3:23cv23972-LC-HTC

petitioner cannot "scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.").

Here, although Wagner raised a similar claim on direct appeal, Doc. 10-12, she argued only state law and did not mention the Sixth and Fourteenth Amendments. Wagner, for example, relied heavily on *State v. Mizell*, 773 So. 2d 618 (Fla. 1st DCA 2000) and Fla. R. Crim. P. 3.201. Nowhere does she reference or discuss any federal law.

In her reply to the Secretary's answer, Wagner argues that one of the Florida state cases she cited, *Mateo v. State*, 932 So. 2d 376, 379-80 (Fla. 2nd DCA 2006), was sufficient to alert the Court that she was making a Sixth and Fourteenth Amendment claim because within that case, the court cited *Chambers v. Mississippi*, 410 U.S. 284 (1973) for the proposition that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." However, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Moreover, a single reference to federal law in a state case cited by Wagner is "exactly the type of 'needle[ ] in the haystack'" that the Eleventh Circuit has previously held is insufficient to satisfy the exhaustion requirement. *See*

Case No. 3:23cv23972-LC-HTC

*McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Such "[o]blique references which hint that a theory may be lurking in the woodwork" are insufficient to alert the state court to the federal nature of the claim. *Kelley*, 377 F.3d at 1345. Therefore, Wagner did not exhaust this issue by fairly presenting a federal claim to the state courts.

Moreover, because any attempt by Wagner to go back to the state courts and raise this claim would be time-barred, the claim is also procedurally defaulted.[1] *See Zeigler v. Crosby*, 345 F.3d 1300, 1304 (11th Cir. 2003) ("A claim is also procedurally defaulted if the petitioner fails to raise the claim in state court and 'it is clear from state law that any future attempts at exhaustion would be futile.'") (quoting *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999)). And while a petitioner can overcome a procedural default by showing either cause and prejudice or a fundamental miscarriage of justice, *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012), *cert. denied*, 133 S.Ct. 875 (2013), Wagner does not argue either exception applies.

---

[1] *See* rule 9.140(b)(3), Florida Rules of Appellate Procedure ("The defendant must file the notice prescribed by rule 9.110(d) with the clerk of the lower tribunal at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *see also* rule 3.850(b) ("A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence become final.").

Case No. 3:23cv23972-LC-HTC

**B.      Ground Two: Ineffective Assistance of Trial Counsel for Failing to Request a Stand-Your-Ground Defense Jury Instruction**

In Ground Two, Wagner argues her trial counsel was ineffective for not objecting when the jury was not instructed on the "Stand Your Ground" defense. Doc. 1 at 7. The Secretary argues Wagner is not entitled to relief in Ground Two because the First DCA's decision denying relief was neither ". . . contrary to, or involved an unreasonable application of, clearly established Federal law. . . ." nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The undersigned agrees.

The First DCA denied relief on this claim under *Strickland*, because the evidence did not support the defense. *Wagner*, 353 So. 3d at 101-02. As the First DCA explained, the Stand Your Ground law suspends the common-law duty to retreat only in limited, defined circumstances. The threat must be "imminent" in time; and in nature it must be deadly, or sufficient to cause "great bodily harm," or constitute a "forcible" felony. *Id.* Here, as the First DCA correctly concluded, the evidence in the record shows that Wagner "was under no 'imminent' threat of death, great bodily harm, or the commission of any forcible felony against herself or anyone else." *Id.*

The evidence included the following: (1) Wagner and her husband had quit fighting when she shot him; (2) she was armed and he was not; (3) her claim that she

was nonetheless afraid of her husband who was not armed and standing "30 feet away up a landscaped hill, falls far, far short of the 'imminent'–threat circumstances in which the Stand Your Ground law applies." *Id.* As the First DCA discussed, "at any instant during that part of the episode, if the need arose to protect herself, Appellee had the ability and the means to do exactly what she ultimately did: pull the trigger. The deadly force in her hands would, by its very nature, provide her instantaneous protection. There was always absolutely zero chance that her husband could outrun a bullet if he chose to advance on her." *Id.* Based on this record, the First DCA's determination that "[t]here was no threat" and, thus, "the retreat instruction could not have applied," is neither contrary to law nor a misapplication of the facts. *Id.*

And because the evidence did not support a stand your ground defense instruction, counsel could not have been deficient (nor Wagner prejudiced) by counsel's failure to seek such an instruction or to object to the lack of such an instruction. *See Williams v. Sec'y, Fla. Dep't of Corr.*, 2023 WL 7017206, at *10 (M.D. Fla. Oct. 25, 2023) ("Just as Defense Counsel is not ineffective for failing to file a motion sure to be denied, so too is Defense counsel not ineffective for failing to ask for a jury instruction that is surely unwarranted.") (internal quotation marks and citations omitted). Therefore, Wagner is not entitled to relief on Ground Two.

## IV.   CONCLUSION

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id*.

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final

order.

Accordingly, it is RECOMMENDED:

1. That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Wagner*, Okaloosa County, Florida, Case Number 2014 CF 1697, Doc. 1, be DENIED without an evidentiary hearing.

2. That a certificate of appealability be DENIED.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 14th day of August, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.